UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.: 19-32130 |
| | § | |
| BORIS TWAIN CLEWIS, | § | Chapter 7 |
| | § | |
| Debtor. | § | |

### TRUSTEE'S MOTION TO COMPROMISE
### CONTROVERSY UNDER BANKRUPTCY RULE 9019

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**AN ELECTRONIC HEARING ON THIS MOTION IS SCHEDULED BEFORE THE HONORABLE EDUARDO RODRIGUEZ ON FEBRUARY 21, 2024 AT 9:00 A.M. (CT) BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS.**

Allison Byman, chapter 7 trustee (the "Trustee") for the bankruptcy estate of Boris Twain Clewis ("Clewis" or the "Debtor"), files this Motion to Compromise Controversy under Bankruptcy Rule 9019 (the "9019 Motion").

**Summary of the Requested Relief**

1. Pursuant to this 9019 Motion, the Trustee seeks approval of a compromise with DAN Investments, LLC ("DAN") and First National Title Insurance Company ("FNTI") on the following terms:

- DAN agrees to pay the Trustee a lump sum of $70,000.00 and FNTI agrees to pay the Trustee a lump sum of $55,000.00 for a total settlement amount of $125,000.00 (the "Settlement Payment").

- In the event that all allowed claims of the Debtor's estate, including but not limited to all administrative expense claims, priority claims and unsecured claims, are paid in full, the Trustee shall pay any remaining funds from the Settlement Payment to DAN and FNTI rather than issuing any surplus payment to the Debtor (the "Excess Settlement Proceeds").

- DAN and FNTI agree that they have not filed and will not file a proof of claim in the Debtor's Bankruptcy Case.

- The Trustee, DAN and FNTI will exchange mutual releases.

- Within seven days of receipt of the Settlement Payment, the Trustee will dismiss the Adversary (defined below) with prejudice.

2. A copy of the proposed Settlement Agreement and Mutual Release between the Trustee, DAN and FNTI (the "Settlement Agreement") is attached as **Exhibit 1**.

3. While DAN and FNTI have agreed to the terms of the compromise set forth in Exhibit 1, the factual recitations and the statements in support of the proposed settlement set forth herein are solely those of the Trustee and are not necessarily agreed to by DAN or FNTI.

**Factual Background**

**A.  The Bankruptcy.**

4. On April 15, 2019 (the "Petition Date"), the Debtor filed his voluntary Chapter 13 bankruptcy petition [Docket. No. 1]. No chapter 13 plan was ever confirmed.

5. On May 5, 2021, the Debtor filed his Notice of Conversion [Docket. No. 133] converting to Chapter 7. On May 11, 2021, the Trustee was appointed.

6. On November 10, 2021, the Debtor filed his Amended Schedule A/B, which listed certain real property located at 13100 Cullen Blvd., Houston, Texas 77048 (the "Cullen Property") as an asset of the Debtor.

7. After her appointment, the Trustee inquired about the Cullen Property and began efforts to sell the Cullen Property for the benefit of the Debtor's estate. However, chain of title for the Cullen Property proved to be complicated.

**B.     The Cullen Property.**

8. According to real property records, it appears that Donald Jernigan ("Jernigan") purchased the Cullen Property from Camp Peniel, Inc. ("Camp Peniel") on or about September 4, 1990. In connection with the purchase, Jernigan executed a promissory note (the "Note") payable to the order of Camp Peniel which was secured by a lien created by the Deed of Trust executed by Jernigan for the benefit of Camp Peniel recorded under Clerk's File No. M803857 in the Official Public Records of Harris County, Texas (the "Deed of Trust").

9. On or about May 16, 1996, the Note and Deed of Trust were assigned from Camp Peniel to Redell Clewis (the Debtor's father) pursuant to the Assignment of Note and Liens recorded under Clerk's File No. R928143 in the Official Public Records of Harris County, Texas (the "Assignment").

10. In June 1999, Redell Clewis (through a power of attorney), recorded and delivered to the Debtor a deed dated June 9, 1999, recorded under Clerk's File No. T854960 in the Official Public Records of Harris County, Texas (the "Deed") as to the Cullen Property.

11. The tax records and appraisal district have listed the Debtor as the owner of the Cullen Property since 1999 and the Debtor scheduled the Cullen Property as a non-exempt asset of his bankruptcy estate.

12. Upon information and belief, Redell Clewis passed away on or about June 30, 1999.

13. Upon information and belief, Jernigan passed away on or about August 15, 1994, and, at the time of his passing, Jernigan was divorced and intestate.

14. Upon information and belief, Jernigan's only heirs are Donald Ray Jernigan, Jr., son of Jernigan and Tilishia Shanae Jernigan, daughter of Jernigan (collectively, the "Jernigan Heirs").

C. **Efforts to Sell the Cullen Property.**

15. In 2021, the Trustee began working to sell the Cullen Property, but quickly learned that any title company would insist on additional documentation regarding transfer of the Cullen Property to the Debtor before a title commitment could be issued.

16. While the Trustee was working on those efforts, the Trustee engaged in discussions with DAN and its real estate agent, Payne, to sell the Cullen Property to DAN in the summer of 2022.

17. In August 2022, the Trustee received a written offer (the "Offer") to purchase the Cullen Property from DAN and Waseem Jilani for $765,780.00. The Offer was transmitted to the Trustee by Payne and was signed by Naseem Jilani, as Manager on behalf of DAN and Waseem Jilani, individually.

18. DAN insisted on closing with a title commitment. Accordingly, the Trustee worked with Stewart Title to determine what would be required to close the sale of the Cullen Property. Stewart Title stated that they would need additional documentation to close the gap in title from Mr. Jernigan to the Debtor's father, Redell Clewis. The Trustee and her counsel provided this information to DAN through its real estate broker, Payne.

19. To satisfy the title company's concerns regarding title, the Trustee contacted the Jernigan Heirs after receiving approval from the Bankruptcy Court [Docket No. 154]. For many months, the Trustee and her counsel worked to get the necessary documents executed by the Jernigan Heirs.

20. By November 2023, the Trustee believed she had sufficient information to seek Court approval of a sale of the Cullen Property to DAN. Accordingly, on November 9, 2023, the Trustee contacted Payne to follow up on her request to submit an updated contract from DAN for the Cullen Property. Payne did not respond. On November 16, 2023, the Trustee's counsel again followed up with Payne regarding the revised contract. Again, Payne did not respond.

21. In January 2024, the Trustee contacted her proposed real estate broker, Kevin Riles, about marketing the Cullen Property since she had not heard from DAN or Payne. Mr. Riles conducted updated diligence on the Cullen Property and learned that it had been purportedly transferred to DAN on or about October 16, 2023.

**D.     The Purported Sale of the Cullen Property.**

22. Astonishingly, the Debtor and the Jernigan Heirs executed a General Warranty Deed that purportedly transferred the Cullen Property to DAN. The alleged transfer occurred without the knowledge of the Trustee and without obtaining Bankruptcy Court approval of any kind.

23. The Debtor, DAN, and Payne were all aware of the Trustee's efforts to sell the Cullen Property and that any sale of the Debtor's interest in the Cullen Property must be approved by the Bankruptcy Court.

24. Based on the Trustee's review of the sale documents, it appears that most, if not all, of the claims in the Debtor's bankruptcy estate – **<u>except administrative claims</u>** – were paid upon

the closing of the sale of the Cullen Property, including but not limited to the tax claims filed by Harris County.

**E.     The Trustee files the Adversary.**

25.     On February 8, 2024, the Trustee filed her Complaint in Adversary No. 24-3020, *Byman v. DAN Investments, LLC, et al.*, pending in the United States Bankruptcy Court Southern District of Texas (the "Adversary"). In the Complaint, the Trustee asserted claims for (i) avoidance of an improper post-petition transfer of the Cullen Property against DAN, the Debtor and Payne, (ii) claims for turnover under 11 U.S.C. § 542 against DAN and the Debtor and (iii) conspiracy to against the Debtor and Payne.

26.     DAN, the Debtor and Payne have all appeared and answered in the Adversary. *See* Docket Nos. 12, 13, 15, 20 and 85.

27.     On September 9, 2024, DAN filed its Amended Third-Party Complaint against First National Title Insurance Company (the "Third-Party Complaint") [Docket No. 61]. In the Third-Party Complaint, DAN asserted claims for breach of contract related to FNTI's duty to defend and duty to indemnify.

28.     On October 7, 2024, FNTI filed its Motion To Dismiss Dan Investments, LLC's Third Party Complaint Pursuant To Fed. R. Civ. P. 12(B)(6) (the "Motion to Dismiss") [Docket No. 66]. On October 10, 2024, DAN filed its Response To First National Title Insurance Company's 12(b)6 Motion. [Docket No. 67]. On October 17, 2024, FNTI filed its Reply To Dan Investments, LLC's Response To First National Title Insurance Company's Motion To Dismiss [Docket No. 71].

29.     On November 15, 2024, the Court entered its Order [Docket No. 80], which granted, in part, and denied, in part, the Motion to Dismiss.

30. Following the conclusion of written discovery and the ruling on the Motion to Dismiss, counsel for the Trustee, DAN and FNTI engaged in arms-length settlement negotiations to resolve the Adversary. The aim of the settlement between the parties was to put the bankruptcy estate in the position it would have been if the sale of the Cullen Property had been administered by the Trustee.

31. Subject to this Court's approval, the Trustee, DAN and FNTI have agreed to resolve their claims against each other in accordance with the terms of the attached Settlement Agreement.

### The Proposed Settlement

32. Subject to this Court's approval, the proposed settlement terms are as follows:

- DAN agrees to pay the Trustee a lump sum of $70,000.00 and FNTI agrees to pay the Trustee a lump sum of $55,000.00 for a total settlement amount of $125,000.00.

- In the event that all allowed claims of the Debtor's estate, including but not limited to all administrative expense claims, priority claims and unsecured claims, are paid in full the Trustee shall pay the Excess Settlement Proceeds to DAN and FNTI in accordance with the Settlement Agreement. For the avoidance of doubt, the Debtor will not receive a distribution of any surplus funds in this case.

- DAN and FNTI agree that they have not filed and will not file a proof of claim in the Debtor's Bankruptcy Case.

- The Trustee, DAN and FNTI will exchange mutual releases.

- Within seven days of receipt of the Settlement Payment, the Trustee will dismiss the Adversary (defined below) with prejudice.

### Merits of the Compromise

33. The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984).

The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

34. In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

(i) the probabilities of ultimate success should the claim be litigated;

(ii) the complexity, expense, and likely duration of litigating the claim;

(iii) the difficulties of collecting a judgment rendered from such litigation; and,

(iv) all other factors relevant to a full and fair assessment of the wisdom of the compromise.

*TMT Trailer*, 390 U.S. at 424. The Fifth Circuit has further elaborated on the factors to be considered in evaluating the wisdom of a proposed settlement. One factor to be considered is "the paramount interest of creditors with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Another factor bearing on the wisdom of the compromise is the extent to which the proposed settlement is the product of arms-length negotiation. *Foster Mortgage*, 68 F.3d at 918.

35. In deciding whether to accept a compromise, a trustee is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation. *In re Mailman Stream Carpet Cleaning Corp.*, 212 F.3d 632 (1st Cir. 2000). Under Bankruptcy Rule 9019, the decision to approve a compromise of controversy is within the sound discretion of the Bankruptcy Court. See *In re Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir.), cert denied, 496 U.S. 880 (1984). However, the approval must receive the "informed, independent judgment of the Bankruptcy Court." *TMT Trailer Ferry*, 390 U.S. at

8

424. The test to apply is: whether or not the terms of the proposed compromise fall within the reasonable range of litigation possibilities. *Barry v. Smith* (*In re New York, N.H. & H.R.R.*), 632 F.2d 955, 960 (2nd Cir.), cert denied, 449 U.S. 1062 (1980).

36. The Trustee is not required to present a full mini-trial or evidentiary hearing to adjudicate the issues being settled. Thus, when determining whether to approve a compromise, this Court "is not to decide the numerous questions of law and fact raised" by the compromise, but is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *See e.g., In re W.T. Grant, Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied, Cosoff v. Rodman*, 464 U.S. 822 (1983).

37. The Trustee believes that the negotiated compromise satisfies the requirements established by the Supreme Court in *TMT Trailer* and the Fifth Circuit in *Cajun Elec. Power.*

### Analysis of Proposed Compromise

38. <u>Probabilities of Ultimate Success</u>. The Trustee has evaluated the claims asserted in the Adversary and believes she would have prevailed on her claims against DAN, Payne and the Debtor. Specifically, under 11 U.S.C. § 549(c), the Trustee argued that DAN was not a good faith purchaser without knowledge of the Debtor's bankruptcy case. DAN vehemently disputed that contention and alleged that it was unaware the Debtor's bankruptcy case was still pending when it purchased the Cullen Property in October 2024. For its part, FNTI alleges that no coverage was available to DAN under the relevant title insurance issued in connection with the sale. Both DAN and FNTI asserted that the Trustee could not avoid the transfer of the Cullen Property because the Debtor did not have an interest in the Cullen Property due to a defect in title.

39. While the Trustee recognizes there is always risk in litigation, the Trustee believes she would have prevailed despite DAN's claim that it was a "good faith purchaser." The Trustee

9

also recognizes that tax claims owed to Harris County were paid when the Cullen Property was sold. Most importantly, the Settlement Payment from DAN and FNTI of $125,000.00 will be enough to satisfy all administrative, priority and unsecured claims in the Debtor's bankruptcy estate. Accordingly, the Trustee believes this factor supports the proposed settlement.

40. <u>Complexity, Expense and Likely Duration</u>. The legal and factual disputes related to the title history of the Cullen Property were undoubtedly complex. The transactions in question occurred more than 30 years ago and almost all of the people that signed the relevant documents have passed away. Under the circumstances, the Trustee believes this factor supports the proposed compromise.

41. <u>Difficulty in Collecting Judgment</u>. The Trustee believes she could collect any judgment that might be entered against DAN. The Trustee believes this factor is neutral to the proposed settlement.

42. <u>Other Factors</u>. The Trustee believes that the proposed compromise is fair and equitable and in the best interest of the estate. The parties reached the settlement through significant, arms-length negotiations. The parties conducted negotiations in good faith and free of fraud or collusion. The Settlement Agreement will bring an end to confusion over ownership on the Cullen Property which has existed for decades. Moreover, the Settlement Agreement should provide enough cash into the Debtor's estate to pay all claims and creditors.

43. The proposed settlement meets the applicable 5th Circuit standards. Accordingly, the Trustee requests that the Court approve the proposed compromises as set forth above and grant such other just relief as is appropriate.

**DATED: January 24, 2025.**

                **McCLOSKEY ROBERSON WOOLLEY, PLLC**

By:   */s/ Thomas A. Woolley, III*
      Timothy M. McCloskey
      SBOT: 13417650
      tmccloskey@mrwpllc.com
      Thomas A. Woolley, III
      SBOT: 24042193
      rwoolley@mrwpllc.com
      Carissa N. Brewster
      SBOT: 24122933
      cbrewster@mrwpllc.com
      190 T.C. Jester Blvd., Suite 400
      Houston, Texas 77007
      713-337-3900
      713-337-3915 (fax)
**SPECIAL COUNSEL FOR THE CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

    I hereby certify that this instrument was served by United States first class mail, with proper postage affixed, addressed to the parties set forth on the attached Service List on this 24th day of January 2025 and all parties received notification through the Court's CM/ECF system.

                      */s/ Thomas A. Woolley, III*
                      Thomas A. Woolley, III

```
Label Matrix for local noticing          City of Houston Liens                     Harris County
0541-4                                   c/o John Dillman                          Linebarger Goggan Blair & Sampson LLP
Case 19-32130                            Linebarger Goggan Blair & Sampson LLP     C/O John P. Dillman
Southern District of Texas               P.O. Box 3064                             PO Box 3064
Houston                                  Houston, TX 77253-3064                    Houston, TX 77253-3064
Fri Jan 24 15:11:10 CST 2025

Harris County Court Costs                4                                         City of Houston
houston_bankruptcy@lgbs.com              United States Bankruptcy Court            P.O. Box 1586
c/o John P. Dillman                      PO Box 61010                              Houston, TX 77251-1586
P.O. Box 3064                            Houston, TX 77208-1010
Houston, TX 77253-3064


City of Houston, Et Al                   Harris County Court Costs                 Harris County et al.
Linbarger Groggan Blair Samson LLP       c/o John P. Dillman                       c/o John P. Dillman
P.O Box 3064                             Linebarger Goggan Blair & Sampson LLP     Linebarger Goggan Blair & Sampson LLP
Hosuton, TX 77253--3064                  P.O. Box 3064                             P.O. Box 3064
                                         Houston, Tx 77253-3064                    Houston, Tx 77253-3064


Harris County, Et Al                     Houston Liens                             INTERNAL REVENUE SERVICE
Linbarger Groggan Blair Samson LLP       c/o John P. Dillman                       P O Box 7346
P.O Box 3064                             Linebarger Goggan Blair & Sampson LLP     Philadelphia PA 19101-7346
Hosuton, TX 77253--3064                  P.O. Box 3064
                                         Houston, Tx 77253-3064


Minnie R. Green                          Scott Boates                              The Pope Law Firm
2014 Rosedale St.                        2101 CityWest Blvd                        5151 Katy Freeway
Houston, TX 77004-6002                   Suite 215                                 Suite 306
                                         Houston, Texas 77042-2830                 Houston, TX 77007-2261


US Trustee                               Allison D Byman                           Boris Twain Clewis
Office of the US Trustee                 Byman & Associates PLLC                   2014 Rosedale St
515 Rusk Ave                             7924 Broadway                             Houston, TX 77004-6002
Ste 3516                                 Suite 104
Houston, TX 77002-2604                   Pearland, TX 77581-7933


James Q. Pope
The Pope Law Firm
6161 Savoy Drive
Ste 1125
Houston, TX 77036-3343




            The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(d)City of Houston,                      (u)Scott Boates                           End of Label Matrix
P.O.Box 1586                                                                       Mailable recipients    18
Houston, TX 77251-1586                                                             Bypassed recipients     2
                                                                                   Total                  20
```